## A00A1451. ABEDI et al. v. CITY OF ATLANTA.
### (536 SE2d 255)

PHIPPS, Judge.

As civil service employees of the City of Atlanta Water Department, Abedi and others sued to enjoin the city from privatizing the municipal water system and from terminating their employment as part of the privatization. Following its denial of plaintiffs' requests for a temporary restraining order and interlocutory injunction, the trial court awarded summary judgment to the city. Plaintiffs appeal, arguing that the city contravened various state statutes in privatizing the water system and that termination of their employment and their loss of pension benefits were in contravention of municipal ordinances which were part of their employment contracts.

The city decided to privatize the water system for fiscal and budgetary reasons and selected United Water Services Unlimited Atlanta LLC, a private contractor, as its delegate for operation and maintenance of the system. The city and United Water entered into a 20-year agreement (referred to as the privatization agreement), which became effective on January 1, 1999.

1. Plaintiffs contend that the privatization agreement violates OCGA §§ 36-30-3 (d) (1), 36-30-7.1 (b), and 36-60-13.

(a) OCGA § 36-30-3 (d) (1) authorizes the governing authority of any municipal corporation to execute contracts specifying rates charged utility customers for water services, so long as such contracts are not for a term in excess of ten years. Because the privatization agreement does not establish water rates, OCGA § 36-30-3 (d) (1) is inapplicable.

(b) OCGA § 36-30-7.1 (b) states that in order for a municipality in Georgia to retain its active status, it must perform at least three of various services set forth in OCGA § 36-30-7.1 (b) (1) (A)-(K). The service specified in subsection (b) (1) (E) is "water supply or distribution or both." Because OCGA § 36-30-7.1 (b) does not mandate the provision of any particular service therein enumerated, this Code section is also inapplicable. Moreover, OCGA § 36-30-7.1 (b) (1) expressly states that the services the municipality provides may be provided directly "or by contract."

(c) OCGA § 36-60-13 is likewise inapplicable. Subsection (c) of this Code section does require multi-year lease, purchase, or lease purchase contracts for a county's or municipality's acquisition of goods or services to be terminable annually.[1] But as shown by subsection (d), the Code section is intended to prohibit creation of a county or municipal debt in excess of one year. Because the privatization agreement creates a service payment system under which no municipal debt is created, OCGA § 36-60-13 does not apply.

2. Plaintiffs contend that the city acted outside its authority in enacting amendments to the city code with retroactive application to them.

When this suit was filed, plaintiffs were classified civil service employees. As such, the city code prohibited them from being "dismissed from employment or otherwise adversely affected as to compensation or employment status except for cause." "Cause" includes such things as negligence, incompetence, inability or failure to perform assigned duties, and conviction or commission of certain crimes. As enacted in 1977, the city code authorized civil service employees to be separated from their employment only for certain specified reasons other than for-cause termination or discharge. These reasons included disability, resignation, and retirement.

On December 7, 1998, the city council amended the code by adding a provision allowing civil service employees to be separated for, among other things, privatization of city services. This amendment became effective on December 10 when signed by the mayor. On or before January 1 (the effective date of the privatization agreement), United Water was required to offer regular, full-time employment to all regular full-time classified employees of the Water Department and, during the first three years of the agreement, to provide base salaries and employment benefits at least equivalent, or reasonably comparable, to those paid or provided by the city. As of January 1, plaintiffs were forcibly terminated from city employment.

Citing *City of East Point v. Grayson*,[2] plaintiffs argue that while the city may be authorized to modify existing civil service provisions for future employees, the city is not entitled to apply changes to existing employees retroactively. *Grayson* recognized that the classified civil service employee in that case had a vested contractual interest in the tenure provisions of his employment.[3]

On the other hand, in *Smith v. Bd. of Commrs. &c. of Hall County*,[4] relied on by the city, the question was whether the Hall

---

[1] See *Wasilkoff v. Douglas County*, 227 Ga. App. 232 (488 SE2d 722) (1997).

[2] 109 Ga. App. 413 (136 SE2d 434) (1964).

[3] Id. at 416 (1).

[4] 244 Ga. 133 (259 SE2d 74) (1979).

County Civil Service Act prohibited the Hall County Board of Commissioners from entering into a contract with a private party for fire protection services under which employees of the fire department would be terminated.[5] The employees contended that the civil service regulations obligated the county to dismiss no employee except for cause. Our Supreme Court concluded that the Civil Service Act did not afford the firemen the protection they claimed, holding that the Civil Service Act did not protect the employees from a decision by the county commissioners that the best interest of the public was served by discontinuing a department of county government.

> The Civil Service Act was designed to assure a faithful employee continued employment and to protect those employees against terminations based on unjust or untrue charges that they were not doing or could not do their jobs properly. The Civil Service Act was not meant to, nor does it, deal with terminations based on budgetary concerns. The rule relied upon by plaintiffs . . . is not applicable to the Commissioners.[6]

This case is thus controlled adversely to the plaintiffs by *Smith.* Here, the council and mayor for the City of Atlanta have decided that, for budgetary reasons, the city's water department should be discontinued and privatized. Under *Smith,* the public's interest overrides the civil service employees' interest in continued employment by the city.[7]

3. Plaintiffs contend that the court erred in holding that the city was entitled to unilaterally divest them of vested pension benefits and to impose penalties upon forced termination.

Under City of Atlanta pension laws, a municipal employee's pension rights vest after five years of active service. An employee who leaves employment before meeting pension eligibility requirements is entitled to a refund of all employee pension contributions including interest at the rate of five percent per annum. An employee who has five years of active service but has not reached the age of 60 years has the right, upon termination of his or her employment, to elect not to withdraw employee pension contributions but instead to begin receiving one-half of a normal monthly pension benefit after attaining 60 years of age. An employee who has completed between 10 and 15 years of service becomes eligible for a normal monthly pension benefit at age 60 decreased by 10 percent per year for each year that

---

[5] Id. at 141-143 (4).
[6] Id. at 142 (4).
[7] Id. at 143 (4).

such completed service lacks being 15 years. An employee who has completed 15 or more years of service is eligible for a normal monthly pension benefit at age 60.

It is undisputed that upon termination of their employment with the city, the plaintiffs were afforded the above rights.[8] It is quite true that they may have suffered financial disadvantages in varying degrees by not being able to continue participating in and contributing to the city's pension program. But the pension laws gave them no right to continue making contributions following termination of their employment. Because termination of their employment was authorized under our holding in Division 2, supra, their pension rights have not been violated.

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED JUNE 22, 2000.

*McKenney & Froelich, William J. McKenney*, for appellants.
*Long, Aldridge & Norman, David Balser, F. T. Davis, Jr., Susan P. Langford, Jerolyn W. Ferrari, Victor A. McLemore, Donald P. Edwards*, for appellee.

---

[8] Compare *Trotzier v. McElroy*, 182 Ga. 719 (186 SE 817) (1936).